Danielle Miller

c/o P.O. Box 42051

Phoenix, Arizona 85080

623-693-6155

themoorishdivine7@gmail.com

FILED ✓ ___ LODGED
___ RECEIVED ___ COPY

APR 0 4 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Danielle Miller ,

      Plaintiff,

vs.

ARIZONA DEPARTMENT
PUBLIC SAFETY, OFFICER Lube
11268 of THE DEPARTMENT OF
PUBLIC SAFETY Official
Capacity and individual

Case No. _____

CV25-08073-PCT-DLR--CDB

**COMPLAINT FOR DAMAGES :**

**42 U.S.C. § 1983; 28 U.S.C. § 1343**

**and related claims**

1

Capacity, Sgariglia 10898 of THE
DEPARTMENT OF PUBLIC
SAFETY Official Capacity and
individual Capacity, Morgan
5603 of THE DEPARTMENT OF
PUBLIC SAFETY Official
Capacity and individual
Capacity, KRIS MAYES in the
care of The STATE OF ARIZONA
Official capacity and individual
capacity, ARIZONA
DEPARTMENT OF
TRANSPORTATION, YAVAPAI
COUNTY, Presiding Judge
David Gordon Official Capacity
and individual Capacity, Col
Jeffery Glover of THE
DEPARTMENT OF PUBLIC
SAFETY Official Capacity,
Wayde Webb of the ARIZONA
MOTOR VEHICLE DIVISION,

Official and individual Capacity,

Susan Gullian Official and

individual Capacity,

Defendants.

**Parties :**

1. Arizona Department of Public Safety (hereafter also known as AZDPS)

2. Arizona Department of Transportation (hereafter also known as ADOT)

3. Kris Mayes in care of the state of Arizona (hereafter also known as State, The State, STATE OF ARIZONA, Kris Mayes) Official Capacity and individual Capacity

4. Arizona Motor Vehicle Division (hereafter also known as AZMVD)

5. Lube 11268 (hereafter also known as lube) Official Capacity and individual Capacity

6. Morgan 5603 (hereafter also known as Morgan) Official Capacity and individual Capacity

7. Sgariglia10898 (hereafter also known as Sgariglia) Official Capacity and individual Capacity

8. Susan Gullian, Official Capacity and individual Capacity,

9.  Wayde Webb, Official Capacity and individual Capacity,

10.    Col. Jeffery Glover, Official Capacity and individual Capacity,

11.    Presiding Judge David Gordon, Official Capacity and
       individual Capacity

12.    Yavapai County

13.    Verde Valley Justice Court Clerk, Official Capacity and
       individual Capacity,

14.    Verde valley Justice court prosecutor; Yavapai county
       prosecutor, Official Capacity and individual Capacity,

## I. INTRODUCTION: JURISDICTION AND VENUE

1. Jurisdiction: This action is brought pursuant to 42 U.S.C. § 1983
against Defendants acting under color of state law and 28 U.S.C. § 1343
concerning aiding and abetting constitutional violations. Plaintiff
asserts that the enforcement of A.R.S. 28-231, ARS 28-702.04B, and
A.R.S. 28-601—practiced by Defendants, State and Municipal
actors—has deprived her of her constitutionally protected right to
travel as well as her Fourth Amendment protection from unreasonable
search and seizure. Federal question jurisdiction is proper under

28 U.S.C. § 1331. Additionally, Defendants' alleged conduct gives rise to claims under 42 U.S.C. § 1983, and related equitable claims. Venue is proper in this District because the events giving rise to these claims occurred herein.

2. Plain Language Commitment.

In compliance with FRCP 5.1, the facts and legal issues are stated as clearly and directly as possible so that the constitutional violations and the relief sought are immediately apparent to both the Court and a jury.

## II. FACTUAL BACKGROUND

3. Defendants, relying on ARS 28-231, ARS 28-702.04B, and ARS 28-601, instituted enforcement policies that impose arbitrary restrictions on Plaintiff's ability to travel. Such policies are enforced in a manner that is not narrowly tailored to any compelling state interest and effectively deprive Plaintiff of constitutionally protected liberties.

4. As a result, Plaintiff asserts that not only did direct enforcement officers violate her rights, but additional state and municipal officials

involved in the creation, promotion, or enforcement of these policies likewise contributed to the deprivation of her constitutional rights.

## III. STATEMENT OF FACTS

5. On or about December 4th, 2023, while lawfully exercising her right to travel, Plaintiff was stopped by Defendant Lube 11268 if the AZDPS—acting under color of state law and in reliance of ARS 28-231, ARS 28-702.04B, and ARS 28-601.

6. During the stop, Defendant used emergency lights to abruptly halt Plaintiff's movement, thereby forcibly terminating her ability to travel, a fundamental right recognized under the U.S. Constitution.

7. Subsequent to the stop, Defendant unlawfully entered Plaintiff's private property in an effort to obtain personal information. This intrusion, carried out without a warrant or probable cause, constituted an unreasonable search and seizure in violation of the Fourth Amendment, as supported by Torres v. Madrid and United States v. Ngumezi.

8. Lube was informed by the plaintiff of the fact she was exercising her right to travel which was protected by the constitution and federal caselaw. Plaintiff explained she was not engaging in any form of commerce and was traveling as a PRIVATE woman.

9. Lube went back to his patrol car for some time, while still detaining the plaintiff and her family, Lube then called more officers to the scene Morgan 5603, Sgariglia 10898 in an attempt to intimidate and coerce the plaintiff into submission of her rights.

10. Officer Morgan, along with Lube, and Sgariglia 10898 returned back to the car and officer morgan took a more aggressive approach with the plaintiff and threatened to take her property and her into custody as well as leaving her family (husband and 4 year old daughter) on the side of the road in cold weather, if not cooperating with demands. (Sgariglia went to the driver side to forcibly take the plaintiff from her vehicle at Morgan's command.) After challenging the constitutionality of the actions the plaintiff cooperated with the unconstitutional demands.

11. Officers made the plaintiff identify herself under threat of arrest and color of authority. Officers then left the scene of the incident. After giving the plaintiff a civil traffic ticket (ARS 28-702.04B).

12. The manner in which ARS 28-231, ARS 28-702.04B, and ARS 28-601 were enforced against Plaintiff was arbitrary and overbroad. This enforcement regime is inconsistent with established constitutional safeguards, as established in cases such as Berberian v. Lussier; Schecter v. Killingsworth; Indiana Springs Co. v. Brown; Murdock v. Penn; and Marbury v. Madison.

13. Additional Defendants.

Plaintiff further alleges that the following individuals, in their official capacities and/or Individual capacities, contributed to or facilitated the unconstitutional enforcement:

14. Defendant Judge David Gordon:

Presiding over proceedings where constitutional challenges, and acknowledgments were ignored, the judge showed clear favoritism towards the officer and prosecution, while dismissing all constitutional arguments made before the court by the plaintiff. The

case continued despite clear constitutional violations. Ending in favor of the officer even after the officer claimed to witness no injury or harm from the incident itself. The presiding judge David Gordon's actions showed no regard for the constitution in any manner and thus perpetuated the furtherance of the plaintiff's constitutional deprivation.

15. Defendant Attorney General, Kris Mayes in care of the STATE OF ARIZONA: As the state's foremost legal officer, the Attorney General bears direct responsibility—and thus liability under 42 U.S.C. § 1983 and 28 U.S.C. § 1343—for her participation in and active enforcement of a policy that subverts the federally established right to travel by effectively redefining it merely as a traffic regulation issue. In her capacity as chief legal officer and as a member of the police officer board and training executive board, she not only participates in shaping and approving departmental policies and long-range plans but also directly influences the training and operational directives of state law enforcement. In doing so, she has imposed a policy that reclassifies lawful travel as an act of commerce—despite federal jurisprudence defining traffic under the Motor Carrier Act jurisdiction (e.g., as reflected in 49 CFR parts 390–395, Iu Re Insurance Co., 96 Fed.

757, and Levine v. State, 35 Tex. Cr. R. 647, 34 S.W. 960)—thereby purposefully diminishing and redefining the plaintiff's constitutional right to travel. Her deliberate disregard of constitutional considerations in favor of enforcing a policy that is colored by impermissible commercial definitions renders her a party to, and an enforcer of, an unconstitutional deprivation of rights, leaving no room for a qualified or absolute immunity defense given that her statutory duties require adherence to established constitutional norms.

16. Defendant County Prosecutor [Name]: Whose individual actions and office aggressively pursued criminal and/or civil charges in connection with these enforcement actions, even after continued constitutional arguments made by the plaintiff the county prosecutor decided to proceed with the case as their policy dictates. The prosecutor ignored all constitutional pleadings and thus contributed to these constitutional deprivations.

17. Defendant County Clerk [Name] : In their administrative roles, facilitated and implemented policies that contributed to these constitutional deprivations.

18. Defendant Wayde Webb: Wayde Webb, serving as Deputy Director for the Motor Vehicle Division and Compliance at the Arizona Department of Transportation, has played a central role in designing and implementing policies that effectively reframe the constitutional right to travel as a traffic regulation matter—a classification that improperly subsumes travel under the ambit of commerce as defined by the Motor Carrier Act jurisdiction (49 CFR parts 390–395, see Iu Re Insurance Co., 96 Fed. 757; Levine v. State, 35 Tex. Cr. R. 647, 34 S.W. 960). Wyade not only helped formulate and enforce department policies that redefine travel as a form of regulated traffic activity but also actively endorsed a regime that disregards the Conventionally protected right to travel as established by federal case law. Consequently, through his deliberate participation and oversight in promulgating and executing these policies, Webb has facilitated a systematic deprivation of constitutional rights, thereby rendering him, under color of state law, liable for civil rights violations under 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

19. Defendant Susan Gullian, Deputy Director, Department of Transportation Law and Policy: Stacy Guillen, as Deputy Director of Law and Policy for the Arizona Department of Transportation, is

directly implicated in the creation and enforcement of policies that effectively transform a fundamental constitutional right into a regulated traffic matter, thereby violating 42 U.S.C. §1983 and 28 U.S.C. §1343. In her role as chief legal counsel, she oversees critical work groups—including the Government Relations Office, Executive Hearing Office, Risk Management, and Administrative Counsel—and acts as the primary liaison with the Office of the Attorney General as well as with international, federal, state, and local government entities. Rather than safeguarding the constitutionally protected right to travel, Guillen has contributed to reinterpreting it through a commercial lens—subordinating it to the regulatory framework of the Motor Carrier Act jurisdiction (as defined by 49 CFR parts 390–395; see Iu Re Insurance Co., 96 Fed. 757; Levine v. State, 35 Tex. Cr. R. 647, 34 S.W. 960). Her extensive background, including prior service as deputy general counsel for Governor Janice Brewer and as a rules and ethics counsel for the Arizona State Senate and House, underscores her capacity to shape and implement legal policy. By actively participating in and endorsing these measures, Guillen becomes a party to a deliberate institutional effort that redefines established federal case law on the right to travel into a newly constructed traffic

regulation, thereby subjecting her conduct to liability for depriving citizens (the plaintiff) of their constitutionally guaranteed rights.

20. Defendant Col. Jeffery Glover, Director of The Arizona Department of Transportation

Colonel Jeffrey Glover, as Director of the Arizona Department of Public Safety, has played a critical role in developing and enforcing policies that effectively recast a fundamental constitutional right—the right to travel—as merely a regulated traffic matter. Drawing on over 24 years of extensive law enforcement leadership, including his tenure in various command roles and as an influential national leader in organizations such as NOBLE and MADD, Colonel Glover has not only shaped but also actively endorsed a regulatory framework that subordinates the constitutional protection of travel to the parameters of commercial activity as defined by the Motor Carrier Act jurisdiction (49 CFR parts 390–395; see Iu Re Insurance Co., 96 Fed. 757; Levine v. State, 35 Tex. Cr. R. 647, 34 S.W. 960). By participating in and directing policies that interpret established federal case law in a manner that reduces the right to travel to a mere traffic regulation issue, and by leveraging his substantial influence in both the practical and doctrinal domains of law enforcement, Col. Glover becomes a

party to, and facilitator of, actions that deprive citizens of their federally guaranteed rights. This deliberate redefinition and enforcement of constitutional protections expose him—and the agency he commands—to liability under 42 U.S.C. §1983 and 28 U.S.C. §1343.

21. Plaintiff contends that the additional Defendants either directly participated in or, by their policies and administrative actions, made it possible for the unconstitutional enforcement to occur. Their combined actions not only deprived Plaintiff of her right to travel and protection from unreasonable government intrusions but also contributed to a broader pattern of civil rights violations.

## IV. ATTACHMENTS:

22. See Danelle's and Darius' Declarations Pages (Attachment 1)

23. Proposed Order (Attachment 2)

24. Memorandum of Law; Citations and Relevance (Attachment 3)

25. Copy of traffic ticket; Copies of ARS STATUTES IN QUESTION. (Attachment 4)

## V. CLAIMS FOR RELIEF

### Count I – Violation of the Right to Travel
### (42 U.S.C. § 1983)

26. Plaintiff reaffirms that the right to travel is a fundamental liberty protected by the U.S. Constitution. Plaintiff realleges and incorporates by reference paragraphs 1 through 25 and all attachments as if fully set forth herein.

27. The enforcement actions carried out by Defendant Lube 11268, Morgan 5603, Sgariglia 10898, under color of state law and pursuant to ARS 28-231, ARS 28-702.04B, and ARS 28-601, constituted an arbitrary and disproportionate restriction on Plaintiff's ability to travel.

28. Defendant's actions, by imposing undue burdens on a fundamental right, failed to satisfy the strict scrutiny standard. Accordingly, Plaintiff has been deprived of her constitutional rights.

### Count II – Unlawful Search and Seizure

**(42 U.S.C. § 1983)**

29. Plaintiff reaffirms her right to be free from unreasonable search and seizure under the Fourth Amendment. Plaintiff realleges and incorporates by reference paragraphs 1 through 25 and all attachments as if fully set forth herein.

30. When Defendant Lube 11268 used emergency lights to abruptly stop Plaintiff and Defendant Lube 11268, Morgan 5603, Sgariglia 10898, subsequently entered Plaintiff's property without the benefit of a warrant or probable cause, these actions constituted a violation of Plaintiff's Fourth Amendment rights.

31. These actions are inconsistent with established constitutional protections and directly contravene precedents such as Torres v. Madrid and United States v. Ngumezi.

**Count III – Liability Under Color of State Law**
**(42 U.S.C. § 1983; Municipal Liability under Monell)**

32. Plaintiff realleges and incorporates by reference paragraphs 1 through 25 and all attachments as if fully set forth herein. Plaintiff alleges Defendant Lube 11268, Morgan 5603, Sgariglia 10898, acted under color of state law and deprived Plaintiff of her constitutional rights.

33. In addition, municipal actors—specifically Yavapai County and the Arizona Department of Public Safety—are liable under the Monell doctrine for having established or implemented policies that resulted in the deprivation of Plaintiff's constitutional rights.

**Count IV – Aiding, Abetting, and Conspiracy to Deprive Plaintiff of Constitutional Rights**

**(42 U.S.C. § 1983; 28 U.S.C. § 1343; 42 U.S.C. § 1985)**

34. Plaintiff realleges and incorporates by reference paragraphs 1 through 25 and all attachments as if fully set forth herein.

35. Plaintiff alleges that the additional Defendants—namely, Defendant Judge David Gordon, Defendant Attorney General Kris Mayes in Care of The State Of Arizona, Defendant County Prosecutor

[Name], Defendant County Clerk [Name], Defendant Wayde Webb Deputy Director of AZ MVD,  Defendant Susan Gullian, Deputy Director, Department of Transportation Law and Policy, Defendant Col. Jeffry Glover, Director of AZDPS, Lube 11268, Morgan 5603, Sgariglia 10898, AZMVD, ADOT, AZDPS, Yavapai County —conspired to, aided, and abetted the enforcement of unconstitutional policies.

36. Through their actions, including neglecting constitutional arguments, issuing coercive directives, prosecuting traffic violations without regard for constitutional standards, and crafting policies that facilitate such enforcement, these Defendants collaborated either explicitly or implicitly in depriving Plaintiff of her fundamental rights.

37. Plaintiff alleges that these coordinated actions were taken with knowledge of the unconstitutionality of the policies and in reckless disregard of Plaintiff's rights, entitling her to both compensatory and punitive damages.

38. Plaintiff reserves the issue of any applicable immunity (absolute or qualified) for resolution by the Court at the appropriate stage.

**Count V – Conspiracy to Deprive Plaintiff of Civil Rights
(18 U.S.C. § 241)**

39. Plaintiff realleges and incorporates by reference paragraphs 1 through 25 and all attachments as if fully set forth herein.

40. Plaintiff alleges that the Defendants, acting under color of law, conspired with one another to willfully and intentionally deprive her of her constitutional rights—including the fundamental right to travel and the right to be free from unreasonable governmental actions—in violation of 18 U.S.C. § 241.

41. Defendants Lube 11268, Morgan 5603, Sgariglia 10898, Judge David Gordon, Attorney General Kris Mayes, County Prosecutor [Name], County Clerk [Name], City Counsel [Name], Wayde Webb, Susan Gullian, and Col. Jeffery Glover (and any additional municipal actors implicated herein) are each eligible parties to this claim, having participated in or facilitated the conspiracy designed to violate Plaintiff's civil rights.

## Count VI – Deprivation of Rights Under Color of Law

## (18 U.S.C. § 242)

40. Plaintiff realleges and incorporates by reference paragraphs 1 through 25 and all attachments as if fully set forth herein.

41. Plaintiff asserts that all Defendants, by virtue of their official positions and under color of law, willfully deprived her of rights secured by the Constitution—most notably, her right to travel and her Fourth Amendment right to be secure against unreasonable searches and seizures—in direct violation of 18 U.S.C. § 242.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and grant the following relief:

a. Declaratory Relief:

Declare that the enforcement of ARS 28-231, ARS 28-702.04B, and ARS 28-601, as implemented in this case, is unconstitutional as applied to Plaintiff.

b. Injunctive Relief:

Issue a permanent injunction restraining all Defendants—including state officials and municipal agents—from enforcing or implementing the challenged statutes in a manner that violates constitutional rights.

c. Damages:

Award Plaintiff compensatory damages in an amount to be determined at trial sufficient to redress the deprivation of her constitutional rights.

d. Punitive Damages:

Award punitive damages against any Defendant whose conduct is shown to be malicious, willful, or in reckless disregard of Plaintiff's constitutional rights.

e. Attorney's Fees and Costs:

Award Plaintiff her reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

f. Other Relief:

    Grant such further relief as the Court deems just and proper.

g. Settlement Amount:

1. $7 Million U.S. Dollars by Wire Transfer. (I will not pursue criminal charges. Nor will I report this to any newspapers or prominent news media. I just want to travel in peace.)

2. an official declaration of do not stop, do not detain added to Daneille Miller, Darius Johnson, Morowa Johnson, Xannon Johnson in matters related to enforcing traffic statutes. So as to not cause the state and municipal actors any more money.

3. have the state remove all traffic related warrants and charges from the records of Danielle Miller and Darius Johnson.

4. Declare Danielle Miller and Darius Johnson absolved of needing a drivers license and Registration to use the highway and common ways for the purposes of travel.

5. Supply Danielle Miller and Darius Johnson with constitutional license plates, for the purpose of showing they are constitutionally traveling within your system, showing officers not to pull over for traffic statute enforcement. (we do not feel this gives us a right to travel in a reckless or dangerous manner.

As the number one job on the road is to make decisions to keep myself and everyone around me safe.)

6. Have the officers trained to accept constitutional arguments of exercising the right to travel. (I understand officers need reasons to catch people who are doing bad things and wrong in the world, who happen to be on the road, I don't want to curtail the ability to do so.)

7. If all of (g) settlement amount 1-6 cannot be met and its purely monetary redress, declaratory and/or injunctive relief. The settlement amount would be $12 Million U.S. dollars by Wire Transfer.

Dated: 4.3.25

Respectfully submitted,

Danielle Miller

PO BOX 42051

PHOENIX, ARIZONA 85023

623-693-6155

themoorishdivine7@gmail.com

# ATTACHMENT 1

Danelle's and Darius' Declarations Pages

DECLARATION OF DANIELLE MILLER

Danielle Miller   )

               ) §

               )

I, Danielle Miller, (hereafter known as Danielle, DM,) say and attest the following:

1. I am a woman, traveling at the time of the incident under my constitutional Bill of Rights, exercising my right to travel protected by the constitution of the United States of America to use the highways and common ways for the purposes of travel.
2. On the day of 12/4/2023 at approximately 0645, Officer Laube was working active duty for the department of public safety, a department who has been contracted by Yavapai County to enforce legislative Traffic statutes.
3. The officer, while on duty, did use color of state law and color of authority against Danielle Miller and Darius Johnson to infringe and deprive them of constitutional rights and liberties, as well as violate federal law.
4. The Officer did use a show of authority by way of emergency lights to terminate Danielle's freedom of movement.
5. Officer Laube used his color of authority by way of legislative statues to come upon the property of Danielle Miller in efforts of searching DM, DM's property, DM's papers, and DM's effects.
6. Upon contact with the officer, Danielle exercised her rights and evoked her constitutional liberties. DM stated she is exercising their right to travel a right under their constitutional bill of rights and is traveling within the Arizona territory.
7. After stating and explaining to officer Laube that traffic is a commercial term used for people doing commerce on the roadways and highways, Officer Laube went back to the car and called back up.
8. Two more additional units arrived, which frightened and intimidated Danielle Miller from exercising her right to travel.
9. Officer Morgan and Officer Sgrilia did arrive at the scene of the detainment and did use force and intimidation as well as aggressive policy to force color of state law upon Danielle Miller and Darius Johnson.
10. Officers insisted on violating DM's fourth amendment right by trying to make her identify herself.

11. Danielle asked the Officers if they are threatening and coercing her into providing identification.

12. When DM continued to decline giving the officers her ID, Officer Sgrillia walked to the driver door and put his hand on the door handle while Officers threatened to take DM out of her property and arrest her against her will.

13. Danielle had her child in the car and was fearful that she would be taken from her family, and they would be left on the side of the road if the Officers took her away and then took the car away.

14. Danielle told the Officers that she would provide her identification only because they were threatening and coercing her.

15. Officer Laube did file a civil lawsuit against DM, claiming witnessing injury to the state by the action of DM, the officer, department of public safety and Yavapai County stand to make a profit and gain from the actions taken.

16. The department of public safety and Yavapai County have chosen to use legislative statutes which misrepresent, rename or redefine the term traffic in which that new definition infringes upon or deprives DM of the ability to exercise her constitutional right and then hired departments to enforce the misrepresentation known as policy.

17. Officer did show up to court as the accuser and plaintiff within the civil case against DM stating that he did not witness DM being a danger to the public, nor did the officer witness DM injure anyone on the scene, Office Lube stated he was not injured but was merely enforcing the legislative statute he was hired to do.

18. Verde Valley Justice Court by order of David Gordon, did issue a warrant against plaintiff as a means to limit her ability to travel in a non-commercial private manner.

19. The Department of Public Safety, MVD, ADOT, Kris Mayes in care of the state of Arizona, Yavapai County, Verde valley justice court are all saying it is a mandatory requirement to have a driver license and motor vehicle registration in order to travel upon the highways and common ways, this is unconstitutional and infringes upon the plaintiffs fundamental constitutional right to travel and goes against upheld federal case law.

EXECUTED ON    4.3.25

DATE

Danielle Miller

DECLARATION OF DARIUS JOHNSON

Darius Johnson )

         ) §

Danielle Miller )


I, Darius Johnson, (hereafter also known as Darius, DJ, I, Me,) say and attest the following:

1. I am a Private Man exercising my constitutional right to travel with my wife and family at the time of the incident.
2. While driving down a mountain top, headed northbound to flagstaff. Officers used gravity and momentum to entrap citizens on the highway through illegal speed trapping enforcement tactics. (never see officers checking speed going up the mountain)
3. On the day of 12/4/2023 at approximately 6:45 am, Officer Laube worked active duty for the department of public safety, a department who has been contracted by Yavapai County to enforce legislative Traffic statutes.
4. While Traveling towards flagstaff, we were signaled by AZDPS vehicle with emergency lights to pull over. Causing my wife immediate emotional and mental distress.
5. We were not traveling in a reckless manner, nor had we injured anyone nor caused any damage to anyone or anything.
6. The officer while on duty did use color of state law and color of authority against Danielle Miller and Darius Johnson to initiate a traffic stop. As stated by himself upon contact.
7. This traffic stop did infringe and deprive DM and DJ of constitutional rights, liberties as well as violate federal law.
8. The Officer did use a show of authority by way of emergency lights to terminate Danielle's, Darius' and Morowa's freedom of movement.
9. Officer used his color of authority by way of legislative statues to come upon the property of Danielle Miller in efforts of searching DM, DM's property, DM's papers, and DM's effects.

1

10. Upon contact with the officer, Danielle communicated she is exercising her right to travel, a right protected by the constitution, she evoked her constitutional liberties. DM stated she is engaging in any form of commerce on the roadways and reason for being on the road was strictly private travel.

11. After stating to officers traffic is a commercial term used for people doing commerce on the roadways and highways. Officer Laube attempted to argue law for a while, a task outside the executive branch's duties.

12. The officer went back to his car and called back up.

13. Two more additional units showed Morgan and Sgariglia.

14. I (DJ) attempted to communicate constitutional rights and liberties. DPS Officer Morgan refused to listen or communicate with Me (DJ.)

15. Morgan came with an aggressive attitude, Morgan would not listen to any constitutional reproach. Showing his deliberate indifference towards the infringement of DJ and DM rights.

16. Morgan's attitude and approach used to further the efforts of his department frightened, distressed, intimidated, and coerced Danielle from exercising her right to travel and to give into officers coercive tactics to forgo her fourth amendment right to unlawful search and seizure.

17. Officer Morgan while Laube stood next to him, threatened to take DM from her property, namely her vehicle by way of force and arrest her based on failure to identify.

18. Officer Morgan directed Sgariglia to open DM driver's door at his command.

19. Sgariglia did go to the DM side of the vehicle and grabbed the door.

20. I felt I heard Morgan stated under the authority of legislative statute (color of state authority), they would arrest her and leave her family (husband and child) on the side of the road if not doing what the officer said even if DM felt it was in violation of her constitutionally protected bill of rights and liberties. (I cannot be certain I heard taking the car but I know he threatened to arrest DM.)

21. Danielle Miller eventually showed the Driver License to the officer's, the officer's wrote her a civil traffic citation. DM left with her family.

22. Officer Laube did file a civil lawsuit against DM, claiming witnessing injury to the state by the action of DM, the officer, department of public safety and Yavapai County stand to make a profit and gain from the actions taken.

23. The department of public safety and Yavapai County have chosen to use legislative statutes which misrepresent, rename or redefine the term traffic in which that new definition infringes upon and/or deprives DM and Darius of the ability to exercise their constitutional right to travel and then hired departments to enforce the misrepresentation known as policy.

24. Officer did show up to court as the accuser and plaintiff within the civil case against DM stating that he did not witness DM being a danger to the public, nor did the officer witness DM injure anyone on the scene, nor damage any property. Office Laube stated he was not injured but was merely enforcing the legislative statute he was hired to do.

25. Verde Valley Justice Court by order of David Gordon, did issue a judgment and warrant against plaintiff as a means to limit her ability to travel in a non commercial private manner.

26. The proceedings by the Verde Valley Justice Court  regarding this manner was unlawful and an abuse within the premise of justice and the constitution judges and officers take an oath to uphold..

27. The Department of Public Safety, Arizona Motor Vehicle Division, Arizona Department of Transportation, Kris Mayes in care of the state of arizona, Yavapai County, VERDE VALLEY JUSTICE COURT are all saying it is a mandatory requirement to have a driver license and motor vehicle registration in order to travel upon the highways and common ways, this is unconstitutional and infringes upon the plaintiffs fundamental constitutional right to travel and goes against upheld federal case law.

28. I Declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON ___4-3-2025___
DATE

Darius Johnson

3

# ATTACHMENT 2

Proposed Order

Fee + Cost waiver

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Danielle Miller ,

       Plaintiff,

  vs.

ARIZONA DEPARTMENT of PUBLIC SAFETY, OFFICER Lube 11268
Official Capacity and individual Capacity, Sgariglia 10898 Official
Capacity and individual Capacity, Morgan 5603 Official Capacity and
individual Capacity, KRIS MAYES in the care of The STATE OF
ARIZONA Official capacity and individual capacity, ARIZONA
DEPARTMENT OF TRANSPORTATION, YAVAPAI COUNTY, Presiding
Judge David Gordon Official Capacity and individual Capacity, Col
Jeffrey Glover  Official Capacity, Wayde Webb of the ARIZONA MOTOR
VEHICLE DIVISION, Official and individual Capacity, Stacy Gullian
Official and individual Capacity,

 Defendants.

**PROPOSED ORDER**

Before the Court is the Plaintiff's Complaint and Claims for Relief.
Based on the pleadings, the supporting record, and for good cause
shown, it is hereby ORDERED that:

1. **Declaratory Relief.**
   The Court hereby declares that the enforcement of ARS 28-231,
ARS 28-702.04B, and ARS 28-601—as applied in the instant case—is
unconstitutional as applied to the Plaintiff. In particular, Plaintiff's
fundamental right to travel, as recognized under the U.S. Constitution,
shall not be subject to arbitrary, overbroad, or unconstitutional
enforcement actions.

2. **Permanent Injunctive Relief**.
   The Court permanently enjoins all Defendants—including, without
limitation, Defendant Lube 11268, Officer Morgan 5603, Officer Sgariglia
10898, and any other state or municipal agents—from:

1

a.   Stopping, detaining, or otherwise interfering with an individual lawfully exercising the constitutional right to travel;

b.   Using emergency lights or other emergency devices to abruptly halt or forcibly restrict a traveler's movement;

c.   Entering any private property in the absence of a warrant or probable cause for the purpose of obtaining personal information or enforcing traffic statutes in a manner that violates the Fourth Amendment.

3.  **Damages.**
   (a)   Plaintiff shall be awarded compensatory damages in an amount to be determined at trial sufficient to redress the deprivation of her constitutional rights.
   (b)   In addition, punitive damages shall be awarded against any Defendant whose conduct is found to be malicious, willful, or in reckless disregard of Plaintiff's rights.

4.  **Attorney's Fees and Costs.**
   Plaintiff is awarded her reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

5.  **Additional Relief and Policy Directives.**
   a.   It is hereby declared that Plaintiff—and, by extension, Daneille Miller, Darius Johnson, Morowa Johnson, and Xannon Johnson—shall not be stopped or detained solely for exercising their constitutional right to travel.
   b.   The State is ordered to remove all traffic-related warrants and charges from the records of Danielle Miller and Darius Johnson.
   c.   It is further declared that Danielle Miller and Darius Johnson shall be absolved of the statutory requirement to hold a driver's license and vehicle registration for the purpose of using highways and common thoroughfares for travel.
   d.   The State shall supply Danielle Miller and Darius Johnson with constitutional license plates to clearly indicate that they are engaged in

2

constitutionally protected travel and to instruct law enforcement officers not to affect routine traffic stops on that basis.

   e.  All law enforcement personnel within the relevant jurisdiction are hereby directed to receive training regarding the recognition and acceptance of constitutional arguments pertaining to the right to travel.

6. **Settlement Amount.**

   a.  Contingent upon full implementation of the declaratory, injunctive, and additional relief set forth in Paragraphs 1, 2, and 5, the Court awards a monetary settlement in the amount of $7,000,000 USD by wire transfer.

   b.  In the alternative, if the relief granted is limited solely to monetary redress (i.e., if the additional declaratory and/or injunctive relief described in Paragraph 5 is not fully implemented), the settlement amount shall be increased to $12,000,000 USD by wire transfer.

7. **Other Relief**.

   The Court further grants such other and further relief as may be just and proper under the Federal Rules of Civil Procedure and applicable law.

IT IS SO ORDERED.

Dated: _____, 2025.


_____
[Name of Judge]
United States District Judge

3

# ATTACHMENT 3

Memorandum of Law; Citations and Relevance

Danielle Miller

c/o P.O. Box 42051

Phoenix, Arizona 85080

623-693-6155

themoorishdivine7@gmail.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Danielle Miller , | Case No. _____ |
| Plaintiff, | |
| vs. | |
| ARIZONA DEPARTMENT PUBLIC | MEMORANDUM OF LAW IN |
| SAFETY, OFFICER Lube 11268 of | SUPPORT OF PLAINTIFF'S |
| THE DEPARTMENT OF PUBLIC | COMPLAINT |
| SAFETY Official Capacity and | |
| individual Capacity, Sgariglia | Date: 4.3.25 |
| 10898 of THE DEPARTMENT OF | |

1

PUBLIC SAFETY Official Capacity and individual Capacity, Morgan 5603 of THE DEPARTMENT OF PUBLIC SAFETY Official Capacity and individual Capacity, KRIS MAYES in the care of The STATE OF ARIZONA Official capacity and individual capacity, ARIZONA DEPARTMENT OF TRANSPORTATION, YAVAPAI COUNTY, Presiding Judge David Gordon Official Capacity and individual Capacity, Col Jeffery Glover of THE DEPARTMENT OF PUBLIC SAFETY Official Capacity, Wayde Webb of the ARIZONA MOTOR VEHICLE DIVISION, Official and individual Capacity, Susan

Gullian Official and individual

Capacity,

 Defendants.

## I. INTRODUCTION

This memorandum is submitted in support of Plaintiff's Complaint, which alleges that Defendants—comprising law enforcement officers and various state and municipal actors—violated Plaintiff's constitutional rights under 42 U.S.C. § 1983, among other causes of action. The Complaint further seeks injunctive relief, compensatory and punitive damages, and costs. In bringing this action, Plaintiff asserts that the enforcement of Arizona statutes (ARS 28-231, ARS 28-702.04B, and ARS 28-601) contravened her federal constitutional guarantees—including her fundamental right to travel and her Fourth Amendment right to be free from unreasonable searches and seizures—and that Defendants' actions meet the pleading standards prescribed by FRCP 8 and the plain language requirements of FRCP 5.1.

## II. FACTUAL AND PROCEDURAL BACKGROUND

## A. Enforcement Practices and Constitutional Violations

1. Statutory Framework and Enforcement:

  Plaintiff's Complaint begins by stating that Defendants, acting under color of state law and relying on ARS 28-231, ARS 28-702.04B, and ARS 28-601, instituted enforcement policies that imposed arbitrary restrictions on Plaintiff's ability to travel. The Complaint emphasizes that these policies are enforced in a manner not narrowly tailored to any compelling state interest and that such enforcement effectively deprives Plaintiff of constitutionally protected freedoms.

2. Specific Incidents Alleged:

  On December 4, 2023, while lawfully exercising her right to travel, Plaintiff was stopped by Defendant Lube 11268. During the stop:

  - Emergency lights were used to abruptly halt the Plaintiff's movement, curtailing her right to travel.

- Defendant Lube 11268 unlawfully entered Plaintiff's private property without a warrant or probable cause as part of an attempt to obtain personal information.

- Additional officers—including Morgan 5603 and Sgariglia 10898—were summoned, and under the threat of arrest, Plaintiff was forced to comply with unconstitutional demands.

These facts are set forth in detail in paragraphs 5–12 of the Complaint.

## B. Additional Defendants and Coordinated Wrongful Conduct

The Complaint also identifies additional named state and municipal officials—including the Attorney General Kris Mayes, County Prosecutor, County Clerk, City Counsel, Wayde Webb, Susan Gullian, and Col. Jeffery Glover—whose participation, whether direct or as facilitators of policy, contributed to the deprivation of Plaintiff's rights. These allegations support claims not only under 42 U.S.C. § 1983 and related state law theories but also under federal criminal statutes, including 18 U.S.C. §§ 241 (conspiracy to deprive civil rights) and 242 (deprivation of rights under color of law).

## C. Attachments Supporting the Allegations

To corroborate the allegations, the Complaint is accompanied by several attachments:

  - Attachment 1: Danelle's and Darius' Declaration

  - Attachment 2: Proposed Order

  - Attachment 3: Memorandum of Law; Citations and Relevance

  - Attachment 4: Copies of the Relevant ARS Statutes ; Traffic Ticket

## III. ARGUMENT

## A. Jurisdiction and Venue

1. Federal Question Jurisdiction:

   Plaintiff's claims arise under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, implicating constitutional rights that are federally enforced. As provided in the Complaint, federal question jurisdiction exists under 28 U.S.C. § 1331. Additionally, the Complaint asserts that the events

giving rise to these claims occurred within this District, thereby satisfying the venue requirements.

2. Compliance with FRCP:

   The Complaint is drafted in accordance with FRCP Rule 8 (notice pleading) and Rule 10 (form of pleadings), ensuring that the factual and legal bases for the claims are clearly set forth in plain language as mandated by FRCP 5.1.

## B. Alleged Constitutional Violations

1. Right to Travel:

   It is well established that the right to travel is a fundamental liberty protected by the U.S. Constitution. The Complaint details how Defendants' actions—including the abrupt stopping, use of coercive strategies, and issuance of a traffic ticket—constituted an arbitrary and disproportionate restriction on this right. Moreover, these actions do not satisfy the strict scrutiny standard required when a fundamental right is burdened.

2. Unlawful Search and Seizure (Fourth Amendment):

The Complaint alleges that Defendant Lube 11268 (and others, by extension) unlawfully entered Plaintiff's private property without a warrant or probable cause, thus violating the Fourth Amendment. The facts cited are supported by relevant case law, including Torres v. Madrid and United States v. Ngumezi, buttressing the claim for a violation of constitutional protections against unreasonable government intrusions.

## C. Claims Against State and Municipal Actors

1. Liability Under Color of State Law and Monell Doctrine:

   In addition to the direct violation claims, the Complaint pleads that state and municipal officials are liable under 42 U.S.C. § 1983 and the Monell doctrine for implementing policies that led to constitutional deprivations. This is particularly relevant where coordinated policy decisions by municipal actors, such as those in Yavapai County and the Arizona Department of Public Safety, resulted in the deprivation of Plaintiff's rights.

2. Aiding, Abetting, and Conspiracy Claims:

8

Plaintiff's allegations further assert that Defendants, including supervisory officials and administrative actors, conspired to, aided, and abetted the enforcement of unconstitutional policies. This coordinated conduct not only supports a claim under 42 U.S.C. § 1983 but also under 42 U.S.C. § 1985. The Complaint even extends to criminally cognizable claims under 18 U.S.C. §§ 241 and 242, which address the deprivation of civil rights and constitutional rights violations committed under color of law.

## D. Relief Sought

Based on these well-pleaded allegations, Plaintiff respectfully requests that the Court:

    a.  Declare that the constitutional rights to travel and to be secure from unreasonable searches and seizures have been violated.

    b.  Grant injunctive relief to prevent the future enforcement of such unconstitutional policies.

    c.  Award compensatory, punitive, and exemplary damages.

    d.  Order the repayment of attorney's fees and costs incurred as a result of the Defendants' willful misconduct.

    e.  Settlement:

1. $7 Million U.S. Dollars by Wire Transfer.

2. An official declaration of the State, "do not stop, do not detain" added to Daneille Miller, Darius Johnson, Morowa Johnson, Xannon Johnson in matters related to enforcing traffic statutes.

3. have the state remove all traffic related warrants, cases, orders and charges from the records of Danielle Miller and Darius Johnson.

4. Declare Danielle Miller and Darius Johnson absolved of needing a drivers license and Registration to use the highway and common ways for the purposes of travel within the State's traffic system.

5. Supply Danielle Miller and Darius Johnson with constitutional license plates, for the purpose of showing they are constitutionally traveling within your system, showing officers not to pull over for traffic statute enforcement.

6. Have the officers trained to accept constitutional arguments of exercising the right to travel. (I understand officers need reasons to catch people who are doing bad things and wrong in the world, who happen to be on the road, I don't want to curtail the ability to do so.)

7. If all of (e) settlement 1-6 cannot be met and its purely monetary redress, declaratory and/or injunctive relief. The settlement amount would be $12 Million U.S. dollars by Wire Transfer

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court accept the Complaint as properly pleaded and grant all relief requested therein. The allegations set forth in the Complaint satisfy the notice pleading requirements of FRCP Rule 8 and the form requirements of Rules 5.1, 10, and 11. In sum, Plaintiff has stated a claim upon which relief can be granted, and the Defendants should be held accountable for their systematic, unconstitutional actions.

Respectfully submitted ,

Danielle Miller    4.3.25

Danielle Miller, Pro Se

c/o P.O. Box 42051

Phoenix, Arizona 85080

623-693-6155

themoorishdivine7@gmail.com

11

Danielle Miller

c/o P.O. Box 42051

Phoenix, Arizona 85080

623-693-6155

themoorishdivine7@gmail.com

## CITATIONS AND RELEVANCE PAGE

Federal Complaint under FRCP, 42 U.S.C. § 1983, and 28 U.S.C. § 1343

The complaint challenges the enforcement of ARS 28-231, ARS 28-702.04B, and ARS 28-601, asserting that such actions are arbitrary, overbroad, and infringe upon fundamental constitutional protections. The following cases and legal principles establish the precedential foundation for the claims:

## I. Constitutional Precedents

1. Marbury v. Madison (1803)
- Citation: 5 U.S. 137
- Summary: Established judicial review, empowering courts to strike down unconstitutional laws and actions.
- Relevance: Validates that enforcement practices violating constitutional protections warrant strict judicial scrutiny.

2. Berberian v. Lussier (1958)
- Citation: 139 A.2d 869

- Summary: Affirmed that the right to operate an automobile is an essential liberty protected by constitutional guarantees.
- Relevance: Supports the argument that travel-related rights cannot be arbitrarily restricted without due process.

3. Schecter v. Killingsworth (1963)
- Citation: 93 Ariz. 273, 380 P.2d 136
- Summary: Clarified that traffic-related enforcement must meet due process requirements and avoid arbitrary application.
- Relevance: Illustrates how the enforcement of ARS statutes must be narrowly tailored and justified.

4. Tiche v. Osborne (1925)
- Citation: 131 A. 60
- Summary: Highlighted that constitutional rights are safeguarded against government overreach, including implied protections.
- Relevance: Strengthens the claim that arbitrary enforcement of statutes undermines both express and implied constitutional safeguards.

5. Murdock v. Pennsylvania (1943)
- Citation: 319 U.S. 105
- Summary: Determined that the state cannot convert a right into a privilege, license it, and impose fees.
- Relevance: Invalidates the characterization of lawful travel as a privilege subject to restrictive regulations. The enforcement of a driver's license and vehicle registration as a means to travel is unconstitutional.

6. Shuttlesworth v. Birmingham (1965)

- Citation: 373 U.S. 262

- Summary: Affirmed that when a state converts a liberty into a privilege, citizens may exercise that right without fear of penalty.

- Relevance: Directly counters the enforcement regime applied under ARS statutes.


## II. Fourth Amendment and Privacy Precedents

7. Boyd v. United States (1886)

- Citation: 116 U.S. 616

- Summary: Protected against unconstitutional encroachments on personal liberties, especially regarding unlawful searches.

- Relevance: Challenges enforcement actions as violations of Fourth Amendment rights.

8. Torres v. Madrid (2021)

- Citation: 592 U.S. 306

- Summary: Defined the application of physical force with intent to restrain as a "seizure" under the Fourth Amendment.

- Relevance: Highlights aggressive enforcement measures against the plaintiff as constitutionally impermissible.

9. United States v. Ngumezi (2020)

- Citation: 980 F.3d 1285

- Summary: Held that searches conducted during traffic stops without probable cause are unlawful.
- Relevance: Establishes the unconstitutionality of unreasonable searches tied to enforcement practices.


## III. Right to Travel and Traffic Regulations

10. Connolly v. Union Sewer Pipe Co. (1902)
- Citation: 184 U.S. 540
- Summary: Confirmed that constitutionally protected rights cannot be impaired by state police power.
- Relevance: Bolsters the argument that enforcement of ARS statutes infringes on travel rights.

11. Parosa v. City of Tacoma (1960)
- Citation: 57 Wn.2d 409, 357 P.2d 873
- Summary: Found that codes, statutes, and regulations are not necessarily "law" unless consistent with constitutional principles.
- Relevance: Counters attempts to regulate travel rights arbitrarily through statutory enforcement.

12. Thompson v. Smith (1930)
- Citation: 154 S.E. 579
- Summary: Affirmed that the right to travel on public highways is fundamental and constitutionally protected.
- Relevance: Reinforces the plaintiff's claim to freedom from arbitrary regulation of ordinary travel.

13. Teche Lines v. Danforth (1941)

- Citation: Miss., 12 S.2d 784

- Summary: Declared the right to travel on public streets free from unjustified police interference as fundamental.

- Relevance: Supports the assertion that traffic enforcement under ARS violates protected liberties.

14. Simeone v. Lindsay (1907)

- Citation: 65 A. 778

- Summary: Highlighted the right of citizens to drive without undue interference unless linked to criminal conduct.

- Relevance: Frames police interference as constitutionally excessive when applied arbitrarily.

## IV. Commercial Use and Traffic Definitions

15. Iu re Insurance Co. (1899)

- Citation: 96 Fed. 757

- Summary: Differentiated commerce-related travel from personal travel, underlining constitutional liberties.

- Relevance: Reinforces that the plaintiff's non-commercial travel cannot be regulated as if it were commercial activity.

16. 29 CFR § 782.3 (Drivers)

- Summary: Defines drivers under the Motor Carrier Act as individuals engaged in commerce-related transportation.

5

- Relevance: Confirms that non-commercial travelers fall outside the scope of such enforcement frameworks.1`

17. American Mutual Liability Insurance Co. v. Chaput (1951)
- Citation: 60 A.2d 118
- Summary: Clarified the distinction between commercial activities and individual rights in the use of public highways.
- Relevance: Undermines the argument that personal travel can be treated as commercial without justification.


## V. Due Process and Judicial Oversight

18. US v. Will (1980)
- Citation: 449 U.S. 200
- Summary: Confirmed that judges acting without jurisdiction commit acts beyond their authority.
- Relevance: Frames judicial errors in upholding unconstitutional practices as contributory to the deprivation of rights.

19. Miller v. United States (1956)
- Citation: 230 F.2d 486
- Summary: Asserted that exercising constitutional rights cannot be criminalized.
- Relevance: Challenges the imposition of penalties on constitutionally protected travel activities.

## Conclusion

This compilation of case law and statutory interpretations forms a robust legal framework for the federal complaint. It demonstrates that the enforcement of ARS 28-231, 28-702.04B, and 28-601 is inconsistent with constitutional safeguards, and it solidifies the argument that these statutes, as applied, result in the systematic deprivation of fundamental rights. This page not only serves as a reference but also underscores the legal principles at the heart of the complaint.

## Constitutional Precedents Supporting the Federal Complaint

The complaint challenges the arbitrary and overbroad enforcement of state statutes—namely, ARS 28-231, ARS 28-702.04B, and ARS 28-601—that have been employed in a manner inconsistent with constitutional safeguards. The following cases provide a well-established bedrock for the legal theory that such enforcement measures infringe upon the fundamental right to travel (among other constitutional protections) and that state actors may be held liable for aiding constitutional violations.

## I. Legal Framework

A. FRCP and Plain Language Requirements

7

Under FRCP 5.1, the complaint is drafted in clear, direct language. Key factual allegations and legal claims (including violation of the plaintiff's right to travel and unlawful search and seizure) are laid out plainly to ensure that a trier of fact understands how state actions conflict with constitutional principles.

## B. Aiding and Abetting Under Color of State Law

In addition to claims brought under 42 U.S.C. § 1983, the complaint alleges liability for aiding and abetting constitutional violations under 28 U.S.C. § 1343. This statutory framework holds state actors—ranging from law enforcement officers to administrative officials—accountable for enforcing policies that effectively erode constitutionally protected rights.

## II. Landmark Constitutional Precedents

1. Berberian v. Lussier (1958)
- Citation: 139 A.2d 869 (R.I. 1958)
- Summary:
  The Rhode Island Supreme Court examined the suspension of a driver's license under a financial responsibility statute. The case underscored that the right to operate an automobile—integral to earning one's livelihood and exercising the right to travel—is a liberty that cannot be deprived without proper due process.
- Relevance:

This decision validates the argument that any state action that arbitrarily suspends travel privileges without meeting strict due process standards is unconstitutional. Here, the enforcement of ARS statutes is presented as similarly overbroad.

2. Schecter v. Killingsworth (1963)
- Citation: 93 Ariz. 273, 380 P.2d 136 (Ariz. 1963)
- Summary:
  In this Arizona decision, the Court considered whether state-imposed security and suspension measures under the Motor Vehicle Code were compatible with constitutional due process.
- Relevance:
  Schecter is instructive on the necessity for state actions to be narrowly tailored. It supports the contention that recharacterizing the right to travel as merely a traffic regulatory issue—without proper individualized justification—is contrary to constitutional safeguards.

3. Indiana Springs Co. v. Brown (1905)
- Citation: 74 N.E. 615, 165 Ind. 465 (Ind. 1905)
- Summary:
  The Indiana Supreme Court's decision in this case dealt with the reasonableness of enforcement actions and the propriety of state-imposed obligations within the transportation context.
- Relevance:

9

By emphasizing that enforcement must be reasonable and non-arbitrary, Indiana Springs supports the claim that the present enforcement regime under ARS is inherently disproportionate and violates constitutional standards.

4. Murdock v. Pennsylvania (1943)
- Citation: 319 U.S. 105 (U.S. 1943)
- Summary:

Although primarily focused on taxing religious activities, Murdock broadly confirmed that governmental measures which place an undue burden on exercising constitutionally protected rights are invalid.
- Relevance:

This case illustrates that even non-commercial, fundamentally expressive or travel-related activities are shielded from undue governmental impositions. It thereby informs the argument that redefining lawful travel through arbitrary enforcement is unconstitutional.

5. Marbury v. Madison (1803)
- Citation: 5 U.S. 137 (U.S. 1803)
- Summary:

Marbury established the principle of judicial review, affirming that the courts have the duty—and the power—to strike down laws or executive actions that are inconsistent with the Constitution.
- Relevance:

10

As the cornerstone of constitutional law, Marbury empowers the judiciary to review and invalidate state enforcement practices (such as those at issue under ARS) when they infringe on fundamental rights, including the right to travel.

### III. Supplementary Authorities on Reclassifying Travel & Enforcement Techniques

6. Iu Re Insurance Co. (96 Fed. 757)
- Overview:
   Referenced to delineate the boundaries between commercial regulations and constitutional rights, this decision emphasizes that reclassifying everyday activities like travel as commercial transactions undermines constitutional protections.
- Relevance:
   It bolsters the argument that state policies designed to blur the line between commerce and the exercise of a fundamental right are inherently suspect.

7. Levine v. State (35 Tex. Cr. R. 647, 34 S.W. 960)
- Overview:
   This case provides guidance on how legislative and regulatory actions must conform to constitutional principles, particularly in the context of reinterpreting traditional freedoms.
- Relevance:

11

Levine's analysis demonstrates that redesigning the scope of a basic constitutional right—such as travel—by imposing regulatory constraints is a strained statutory interpretation that fails constitutional muster.

## IV. Enforcement Practices and Fourth Amendment Violations

8. Torres v. Madrid (592 U.S. 306, 2021)
- Summary:
  Torres establishes that the application of physical force with the intent to restrain constitutes a "seizure" under the Fourth Amendment—even if the suspect does not ultimately submit.
- Relevance:
  This decision is applied to argue that aggressive enforcement measures, as may have been used in applying the ARS statutes, constitute an unwarranted infringement of personal liberty.

9. United States v. Ngumezi (980 F.3d 1285, 9th Cir. 2020)
- Summary:
  The Ninth Circuit held that a law enforcement officer's act of opening a vehicle door and leaning in during a traffic stop—absent probable cause—amounts to an unlawful search and seizure.
- Relevance:
  Ngumezi reinforces the broader contention that enforcement techniques must not violate the constitutional protections against unreasonable searches. Its principles support the view that the

12

enforcement against the plaintiff, and the role of aiding state officials, is similarly unconstitutional.


## V. Additional Defendants and Their Role

Beyond the statutory and case law backdrop, the complaint brings additional defendants whose actions contribute to the unlawful enforcement regime:

- Defendant Judge David Gordon:
  Allegedly presided over proceedings with blatant disregard for the plaintiff's constitutional arguments, enabling an enforcement process that sanctioned constitutional deprivations.

- Defendant Attorney General Kris Mayes (State of Arizona):
  As Arizona's chief legal officer, she is implicated in shaping and endorsing policies that reframe the right to travel as a mere traffic regulation matter. Her involvement in directing law enforcement policy directly supports the charge of aiding and abetting constitutional violations.

- Defendant Susan Gullian, Deputy Director, Department of Transportation Law and Policy:
  In her capacity overseeing policy formation and intergovernmental relations, Gullian is accused of contributing to reinterpreting a constitutionally protected right into a regulated, commercial

activity—further evidence of a systematic breach of constitutional norms.

Each of these defendants, by actively participating in or endorsing a policy regime that fails the strict scrutiny test for fundamental rights, is held liable under the theory of aiding and abetting as outlined in 28 U.S.C. § 1343.

## VI. Conclusion

Taken together, these cases form a cohesive legal narrative supporting the federal complaint's central argument: that the enforcement of ARS 28-231, ARS 28-702.04B, and ARS 28-601—as applied against the plaintiff—is arbitrary, overbroad, and in direct conflict with the constitutional protections guaranteed to all citizens. The duty of judicial review—as set forth in *Marbury v. Madison*—requires that the courts scrutinize such practices, validate the fundamental right to travel as articulated in *Berberian*, *Schecter*, *Indiana Springs*, and *Murdock*, and ultimately hold state actors accountable when they aid and abet violations of these rights.

Dated: 4-3-25

Respectfully submitted,

Danielle Miller
PO BOX 42051
PHOENIX, ARIZONA 85023
623-693-6155
themoorishdivine7@gmail.com

14

# ATTACHMENT 4

Copy of traffic ticket; Copies of ARS STATUTES IN QUESTION

**VERDE VALLEY JUSTICE COURT**
**10 SOUTH 6TH STREET, COTTONWOOD, AZ 86326  PH - 928-639-5820**

| STATE OF ARIZONA<br>Plaintiff<br><br>Vs<br>DANIELLE CAROLE MILLER<br>Defendant | Case No: J1302CT2023003260<br><br>Complaint No: 915320423338001 | **HEARING NOTICE-CIVIL TRAFFIC** |
|---|---|---|

This matter has been scheduled for Civil Hearing on **02/26/2024** at **2:00PM** at the **VERDE VALLEY JUSTICE COURT.**

By scheduling a civil hearing, you give up your right to attend defensive driving school and if you fail to appear a default judgment will be entered.

Pursuant to Rule 11, Rules of Procedure in Civil Traffic violation Cases, if an attorney is retained, the attorney's Notice of Appearance must be filed with the court at least 10 days prior to the hearing date. Failure to file a Notice of Appearance in a timely manner constitutes a waiver of defendant's right to counsel.

If you are found responsible all fines and fees are due on the date of sentencing.

If you fail to appear on this date and time, a default Judgment will be entered against you, and your case may be referred to a collection agency.

[ ] If you are found or plead responsible for disobeying a red-light traffic signal, including flashing stop signals, you will be ordered by the Motor Vehicle Division, to successfully complete traffic survival school.

**IT IS <u>YOUR</u> RESPONSIBILITY TO BE AWARE OF ALL FUTURE COURT DATES SHOULD ANY SCHEDULED MATTER BE CONTINUED, YOU MUST CONTACT THE COURT OR YOUR ATTORNEY TO GET THE NEW DATE.**

**Please notify the Court of any change of address in order to continue receiving court notices.**

PAYMENT METHODS
• Online at **www.azcourtpay.com**
• In Person or by mail at the above address

Please contact the court if you need special accommodations (such as assistive devices, interpreters, etc.)

Date: **01/23/2024**                    Judge Name: **HON DAVID GORDON**

Judge Signature: _____

Hearing Notice mailed/delivered to the Defendant on: 1/23/2024 ____ by _____

<u>SUBPOENA</u>

TO:  TROOPER LAUBE              Badge#11268              AGENCY:DPS

YOU ARE HEREBY ORDERED to appear at the above entitled Court on the hearing date and time above, and remain there until excused by the Judge conducting the proceeding, to give testimony on behalf of the State.

<u>Certificate of Service:</u> A copy of this document was delivered to the above-named officer or to the officer's agency or agency mailbox on _____.

_____
Signature:

# ARIZONA TRAFFIC TICKET AND COMPLAINT

| COLLISION | | COMMERCIAL |
| FATALITY | | HAZ MAT |
| SERIOUS INJURY | | 16 PASSENGER |

**DEFENDANT**

| Complaint | Driver's License Number | State | Class | Military |
| 915320423338001 | D06959711 | AZ | D | Yes |

| Name: First | Middle | Last | Interpreter Required | Spanish Only | Other Language |
| DANIELLE | CAROLE | MILLER | | | |

| Residential/Commercial Address | City | State | Zip Code | Phone | Cell Phone |
| 1001 W VILLA RITA DR | PHOENIX | AZ | 85023- | | |

| Mailing Address | City | State | Zip Code | Email Address |
| | | | | |

| SSN | Gender | Eyes | Hair | Height | Weight | Origin | DOB | Endorsements | Restrictions |
| 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 | F | BRO | RED | 5-05 | 135 | W | 04/30/1993 | | B |

**VEHICLE**

| Year | Make | Model | Style | Color | License Plate | State | Expire. Date | Vehicle Identification Number (VIN) |
| 2023 | TOYT | 4RN | 4DSW | WHI | 04A90K | AZ | 202409 | JTEEU5JR1P5278273 |

| Registered Owner | Address | City | State | Zip Code |
| DANIELLE MILLER | 1001 W VILLA RITA DR | PHOENIX | AZ | 850231518 |

## THE UNDERSIGNED CERTIFIES THAT:

**ON**

| Date | Time | SPEED: | Approx | Posted | R&P | Speed Measurement Device | Equipment Number | Direction Of Travel | Lane |
| 12/04/2023 | 06:48 | | 91 | 65 | 65 | L | 121201 | S | |

**AT**

| On-Highway | Highway | Milepost | Location | Precinct | County | STATE OF ARIZONA |
| YES | I17 | 286 | | 1302 | YAVAPAI | |

## THE DEFENDANT COMMITTED THE FOLLOWING:

| | Section | Statute | Violation | Domestic Violence | Criminal | Civil Traffic |
| A | 28-702.04B | A | EXCEED MAX INTERSTATE SPEED OUTSIDE URBAN ARE | | Criminal Traffic | ☑ Civil Traffic |
| | | | | | Petty Offense | Civil Non Traffic |
| | Docket Number | Disposition Codes | Disposition Date | Sanction | | Municipal Code |
| | 1302300380D | | | 493 | | |

| | Section | Statute | Violation | Domestic Violence | Criminal | Civil Traffic |
| B | | | | | Criminal Traffic | Civil Non Traffic |
| | | | | | Petty Offense | Municipal Code |
| | Docket Number | Disposition Codes | Disposition Date | Sanction | | |

| | Section | Statute | Violation | Domestic Violence | Criminal | Civil Traffic |
| C | | | | | Criminal Traffic | Civil Non Traffic |
| | | | | | Petty Offense | Municipal Code |
| | Docket Number | Disposition Codes | Disposition Date | Sanction | | |

| | Section | Statute | Violation | Domestic Violence | Criminal | Civil Traffic |
| D | | | | | Criminal Traffic | Civil Non Traffic |
| | | | | | Petty Offense | Municipal Code |
| | Docket Number | Disposition Codes | Disposition Date | Sanction | | |

| | Section | Statute | Violation | Domestic Violence | Criminal | Civil Traffic |
| E | | | | | Criminal Traffic | Civil Non Traffic |
| | | | | | Petty Offense | Municipal Code |
| | Docket Number | Disposition Codes | Disposition Date | Sanction | | |

| YOU MUST APPEAR AT: | Court | Court No. | AT THE DATE AND TIME INDICATED: | Date | Time |
| | VERDE VALLEY JC | 1302 | | 01/03/2024 | 10:00 |
| | Court Phone No. | Business Address | | City, State, Zip Code | |
| | (928) 639-5820 | 10 S. 6TH ST. | | COTTONWOOD AZ, 86326 | |

| CRIMINAL: ☐ Without admitting guilt, I promise to appear as directed herein. | ☐ VICTIM? | FINGERPRINTED? |
| CIVIL: ☑ Without admitting responsibility, I acknowledge receipt of this complaint. | ☐ VICTIM NOTIFIED? | ☐ IN CUSTODY |

**SERVED**

X _____

I certify upon reasonable grounds, I believe the person named above committed the acts described and I have served a copy of this complaint upon the defendant.

D. Laube                                   11268

| COMPLAINANT | BADGE NO. | LOCATION CODE |

*I hereby certify that the information contained herein is a true and correct abstract of the record in this case*

FILED

JUDGE: _____

DEC 0 5 2023

BY: _____
                                    Clerk of the Court

Verde Valley Justice Court

DATE: _____

*(handwritten margin: Miller Danielle Carole)*

28-601. Definitions (11) and (28)

In this chapter, unless the context otherwise requires:

1. "Commercial motor vehicle" means a motor vehicle or combination of vehicles that is designed, used or maintained to transport passengers or property in the furtherance of a commercial enterprise, that is a commercial motor vehicle as defined in section 28-5201 and that is not exempt from gross weight fees as prescribed in section 28-5432, subsection B.

2. "Controlled access highway" means a highway, street or roadway to or from which owners or occupants of abutting lands and other persons have no legal right of access except at such points only and in the manner determined by the public authority that has jurisdiction over the highway, street or roadway.

3. "Crosswalk" means:

(a) That part of a roadway at an intersection included within the prolongations or connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or, in absence of curbs, from the edges of the traversable roadway.

(b) Any portion of a roadway at an intersection or elsewhere that is distinctly indicated for pedestrian crossing by lines or other markings on the surface.

4. "Escort vehicle" means a vehicle that is required pursuant to rules adopted by the department to escort motor vehicles or combinations of vehicles that require issuance of a permit pursuant to article 18 or 19 of this chapter for operation on the highways of this state.

5. "Explosives" means any chemical compound, mixture or device that is commonly used or intended for the purpose of producing an explosion and that is defined in 49 Code of Federal Regulations part 173.

6. "Flammable liquid" means any liquid that has a flash point of less than one hundred degrees Fahrenheit and that is defined in 49 Code of Federal Regulations section 173.120.

7. "Gross weight" means the weight of a vehicle without a load plus the weight of any load on the vehicle.

8. "Intersection" means the area embraced within the prolongation or connection of the lateral curb lines, or if none, the lateral boundary lines of the roadways of two highways that join one another at, or approximately at, right angles, or the area within which vehicles traveling on different highways joining at any other angle may come in conflict. If a highway includes two roadways thirty or more feet apart, each crossing of each roadway of the divided highway by an intersecting highway is a separate intersection. If the intersecting highway also includes two roadways thirty or more feet apart, each crossing of two roadways of the highways is a separate intersection.

9. "License" means any license, temporary instruction permit or temporary license issued under the laws of this state or any other state that pertain to the licensing of persons to operate motor vehicles.

10. "Low emission and energy efficient vehicle" means a vehicle that has been certified by the United States environmental protection agency administrator in accordance with 23 United States Code section 166 or that is part of a federally approved pilot program.

11. "Motorized wheelchair" means any self-propelled wheelchair that is used by a person for mobility.

12. "Official traffic control device" means any sign, signal, marking or device that is not inconsistent with this

chapter and that is placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning or guiding traffic.

13. "Park", if prohibited, means the standing of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in loading or unloading.

14. "Photo enforcement system" means a device substantially consisting of a radar unit or sensor linked to a camera or other recording device that produces one or more photographs, microphotographs, videotapes or digital or other recorded images of a vehicle's license plate for the purpose of identifying violators of articles 3 and 6 of this chapter.

15. "Pneumatic tire" means a tire in which compressed air is designed to support the load.

16. "Pole trailer" means a vehicle that is all of the following:

(a) Without motive power.

(b) Designed to be drawn by another vehicle and attached to the towing vehicle by means of a reach or pole or by being boomed or otherwise secured to the towing vehicle.

(c) Used ordinarily for transporting long or irregularly shaped loads such as poles, pipes or structural members capable generally of sustaining themselves as beams between the supporting connections.

17. "Police officer" means an officer authorized to direct or regulate traffic or make arrests for violations of traffic rules or other offenses.

18. "Private road or driveway" means a way or place that is in private ownership and that is used for vehicular travel by the owner and those persons who have express or implied permission from the owner but not by other persons.

19. "Railroad" means a carrier of persons or property on cars operated on stationary rails.

20. "Railroad sign or signal" means a sign, signal or device erected by authority of a public body or official or by a railroad and intended to give notice of the presence of railroad tracks or the approach of a railroad train.

21. "Railroad train" means a steam engine or any electric or other motor that is with or without cars coupled to the steam engine or electric or other motor and that is operated on rails.

22. "Roadway" means that portion of a highway that is improved, designed or ordinarily used for vehicular travel, exclusive of the berm or shoulder. If a highway includes two or more separate roadways, roadway refers to any such roadway separately but not to all such roadways collectively.

23. "Safety zone" means the area or space that is both:

(a) Officially set apart within a roadway for the exclusive use of pedestrians.

(b) Protected or either marked or indicated by adequate signs as to be plainly visible at all times while set apart as a safety zone.

24. "Sidewalk" means that portion of a street that is between the curb lines or the lateral lines of a roadway and the adjacent property lines and that is intended for the use of pedestrians.

25. "Stop", if required, means complete cessation from movement.

26. "Stop, stopping or standing", if prohibited, means any stopping or standing of an occupied or unoccupied vehicle, except when necessary to avoid conflict with other traffic or in compliance with directions of a police officer or traffic control sign or signal.

27. "Through highway" means a highway or portion of a highway at the entrances to which vehicular traffic from intersecting highways is required by law to stop before entering or crossing and when stop signs are erected as provided in this chapter.

28. "Traffic" means pedestrians, ridden or herded animals, vehicles and other conveyances either singly or together while using a highway for purposes of travel.

29. "Traffic control signal" means a device, whether manually, electrically or mechanically operated, by which traffic is alternately directed to stop and to proceed.

30. "Truck" means a motor vehicle that is designed, used or maintained primarily for the transportation of property.