**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Danielle Miller, | No. CV-25-08073-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Department of Public Safety, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's application for leave to proceed in forma pauperis (Doc. 2), which the Court hereby grants. The Court will screen the complaint (Doc. 1) pursuant to 28 U.S.C. § 1915(e)(2)[1] before it is allowed to be served. Pursuant to that screening, the complaint is dismissed without leave to amend.

I.  Legal Standard

Under 28 U.S.C. § 1915(e)(2), a complaint is subject to dismissal if it contains claims that are "frivolous or malicious," that "fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." *Id.* A complaint "is frivolous where it lacks an arguable basis either in law or in fact," such that "§ 1915(d)'s term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "Section 1915(d) is designed largely to discourage

---

[1] Although section 1915 largely concerns prisoner litigation, section 1915(e) applies to all in forma pauperis proceedings. *Calhoun v. Stahl,* 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.").

the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Id.* at 327. "To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless," such as "claims describing fantastic or delusional scenarios." *Id.* at 327-28.

II.  The Complaint And Its Attachments

Although the complaint is not a picture of clarity, the following summary is pieced together from the complaint and its attachments. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) (review of sufficiency of complaint is limited to "the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice").

On December 4, 2023, Plaintiff was driving approximately 91 miles per hour on the I-17, where the posted speed limit was 65 miles per hour, resulting in a traffic stop and ultimately the issuance of a speeding ticket. (Doc. 1 at 62.)[2] Upon being stopped by Defendant Officer Laube (named in the complaint as "Officer Lube 11268"), who "used emergency lights to abruptly halt Plaintiff's movement, thereby forcibly terminating her ability to travel" (*id.* at 6 ¶ 6), Plaintiff informed Officer Laube that she and her husband were "exercising their right to travel" and that the traffic stop was violating that right. (*Id.* at 25 ¶¶ 4, 6.) Plaintiff also apparently informed Officer Laube that "traffic is a commercial term used for people doing commerce on the roadways and highways" (*id.* at 25 ¶ 7) and "explained she was not engaging in any form of commerce" (*id.* at 7 ¶ 8). Officer Laube "went back to his patrol car for some time" and "then called more officers to the scene." (*Id.* at 7 ¶ 9.)

Officers Morgan and Sgariglia arrived and "insisted on violating [Plaintiff's] fourth

---

[2]  Plaintiff attached the speeding ticket and does not allege that any of the factual assertions in the ticket are false.

amendment right by trying to make her identify herself." (*Id.* at 25 ¶ 10.) When Plaintiff "continued to decline giving the officers her ID, Officer [Sgariglia] walked to the driver door and put his hand on the door handle" (*id.* at 26 ¶ 12), and Officer Morgan insisted that Plaintiff identify herself, threatening to take her into custody and take her property if she did not cooperate. (*Id.* at 7-8 ¶¶ 10-11.) After Plaintiff identified herself, Officer Laube gave Plaintiff a civil traffic ticket and the officers left the scene. (*Id.*)

In lieu of attending defensive driving school or paying the ticket, Plaintiff requested a civil hearing, which was set before Judge David Gordon on February 26, 2024 at the Verde Valley Justice Court. (*Id.* at 61.) Judge Gordon dismissed Plaintiff's constitutional arguments and the case was resolved "in favor of the officer." (*Id.* at 8-9 ¶¶ 14-15.)

Plaintiff asserts civil claims for (1) violation of the right to travel, (2) unlawful search and seizure, (3) *Monell* liability, (4) conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985, (5) criminal conspiracy against rights pursuant to 18 U.S.C. § 241, and (6) criminal deprivation of rights under color of law pursuant to 18 U.S.C. § 242, naming as Defendants the Arizona Department of Public Safety, Officers Laube, Morgan, and Sgariglia, Judge Gordon, the unnamed county "prosecutor" at Plaintiff's civil traffic hearing, the unnamed county clerk, Arizona Attorney General Kris Mayes, Deputy Director for the Motor Vehicle Division and Compliance at the Arizona Department of Transportation Wayde Webb, Deputy Director of Law and Policy at the Department of Transportation Stacy Guillen, and Director of the Arizona Department of Public Safety Col. Jeffrey Glover. (*Id.* at 15-20.)

Plaintiff seeks relief in the form of "$7 Million U.S. Dollars by Wire Transfer," an injunction preventing all state and municipal actors from stopping or detaining Plaintiff, her husband, and unrelated persons Morowa Johnson and Xannon Johnson "in matters related to enforcing traffic statutes," removal of "all traffic related warrants and charges from the records of [Plaintiff and her husband]," a declaration that certain statutes are "unconstitutional as applied to Plaintiff," a declaration that Plaintiff and her husband are "absolved of needing a drivers license and Registration to use the highway and common

ways for the purpose of travel," an injunction requiring the state to supply Plaintiff and her husband with special "constitutional license plates" that tell officers they cannot stop Plaintiff or her husband for traffic statute enforcement," and an injunction requiring that police officers be "trained to accept constitutional arguments of exercising the right to travel." (*Id.* at 20-23.)[3]

III. <u>Analysis</u>

There are so many reasons why this complaint must be dismissed that it is hard to know where to begin. Because the legal theories are indisputably meritless, the Court will begin (and end) there.

A police officer may stop a traveling vehicle without violating the Fourth Amendment when he has either probable cause or a reasonable suspicion that a traffic violation has occurred. *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005). "In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 185 (2004). "[Q]uestions concerning a suspect's identity are a routine and accepted part of many *Terry* stops." *Id.* at 186. "Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop," such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance"— checks that "serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (cleaned up). To the extent that the complaint and its attachments suggest that one of the officers searched Plaintiff's vehicle (Doc. 1 at 6 ¶ 7), that is also permissible—"the search of an automobile can be reasonable without a warrant." *Collins v. Virginia*, 584 U.S. 586, 591 (2018). Finally, judges like Judge Gordon enjoy immunity for "judicial acts" performed in the course of their work, *Lund v. Cowan*, 5 F.4th 964, 971 (9th Cir. 2021), and "absolute immunity . . . protects the prosecutor's role as an advocate."

---

[3] The complaint appears to include an offer to settle the case for "$12 Million U.S. dollars by Wire Transfer." (*Id.* at 23.)

*Kalina v. Fletcher*, 522 U.S. 118, 127 (1997).

Plaintiff has advanced no cognizable legal theory as to why she believes she should have the right to drive without a driver's license and registration or why she should be able to obtain injunctive relief preventing officers from stopping her, her husband, or others when they have reasonable suspicion or probable cause to believe a traffic violation has occurred. Nor has Plaintiff advanced any cognizable theory as to why she should be able to sue the judges and prosecutors who were involved in subsequent legal proceedings. In alleging otherwise, Plaintiff appears to be advancing sovereign-citizen arguments that courts have long rejected as frivolous. *See, e.g., Diaz v. California*, 2024 WL 5125840, *4 (E.D. Cal. 2024) ("To the extent that Plaintiff's arguments are based on sovereign-citizen type ideology or similar viewpoints, he is advised that courts have uniformly rejected such arguments as completely meritless.").[4]

The complaint is frivolous and is dismissed without leave to amend. "Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (internal quotation marks and citation omitted). The complaint lacks an arguable basis in law and it is absolutely clear that amendment cannot cure this fatal deficiency.

Accordingly,

**IT IS ORDERED granting** the Application to Proceed in District Court without Prepaying Fees or Costs (Doc. 2).

---

[4] Plaintiff's complaint contains the sort of unusual and unexplained capitalizations (*i.e.*, "Plaintiff explained she was not engaging in any form of commerce and was traveling as a PRIVATE woman," *see* Doc. 1 at 7 ¶ 8) that often appear in sovereign-citizen ideology. *Cf. Diaz*, 2024 WL 5125840 at *4 ("Plaintiff's references to a corporation bearing his name, which he spells in all capital letters (HENRY EDWARD DIAZ II, INC.), contracting with the State of California is similar to sovereign citizen arguments made in other cases."); *Hunt v. Oregon*, 2022 WL 17340408, *3 (D. Or. 2022) (rejecting litigant's attempt "to challenge the trial court's jurisdiction based on the use of all capital letters, which is grounded in 'sovereign citizen' ideology"). Plaintiff's complaint also contains suggestions, consistent with sovereign-citizen ideology, that she does not belong to the same constitutional system as others. (Doc. 1 at 22 ¶ 5, emphasis added [one of the requests for relief is to "[s]upply Danielle Miller and Darius Johnson with constitutional license plates, for the purpose of showing they are constitutionally traveling within *your* system"].)

**IT IS FURTHER ORDERED** that the complaint (Doc. 1) is **dismissed** without leave to amend.

Dated this 1st day of May, 2025.

Dominic W. Lanza
United States District Judge